L<small>EHOTSKY</small> K<small>ELLER</small> C<small>OHN</small> LLP
200 Massachusetts Ave. NW
Washington, DC 20001
Scott A. Keller
scott@lkcfirm.com

October 17, 2025

**Via ECF**

Christopher M. Wolpert
Clerk of Court
United States Court of Appeals
  for the Tenth Circuit
Byron White U.S. Courthouse
1823 Stout Street
Denver, CO 80257-1823.

>   RE:   *NetChoice, LLC v. Brown*, No. 24-4100 (10th Cir.),
>         Plaintiff-Appellee's Letter Under Fed. R. App. P. 28(j)

Dear Mr. Wolpert:

The Ninth Circuit's decision in *NetChoice, LLC v. Bonta*, 2025 WL 2600007 (9th Cir. Sept. 9, 2025), *pet. for reh'g filed* Sept. 23, 2025, *resp. requested* Sept. 30, 2025, is distinguishable and erroneously decided for the purposes that Defendants cite it.

*First*, this case is not about social media companies' right to curate speech through "personalized feeds." *Id.* at *6-7. The Utah Act here regulates websites' *publication* of vast amounts of protected speech. NetChoice Br.9-10. *Bonta* is inapposite.

*Second*, *Bonta* misapplied *Moody*. *Moody* held that websites engage in protected expression when they present "personalized" or "individualized" "feeds" to users. *Moody v. NetChoice, LLC*, 603 U.S. 707, 718, 734, 744 (2024).

That is true even if the feeds are based on "algorithms" reflecting users' interests if the website *also* applies its own "content standards." *Id.* at 734-36 & n.5. Despite ample evidence that personalized feeds meet that standard, *Bonta* wrongly concluded that whether a feed is expressive "requires review of *each* member's algorithm" to place each along a "spectrum" of expressiveness. 2025 WL 2600007, at *6. That cannot be squared with *Moody*'s recognition that social media feeds *are* expressive. *Moody* reserved judgment only about a hypothetical feed that "respond[s] *solely* to how users act online." 603 U.S. at 735-36 & n.5 (emphasis added). That hypothetical is not presented here.

*Third*, *Bonta* concluded that California's *default* requirement that "minors' . . . posts are visible only to friends on the platform" satisfied intermediate scrutiny. 2025 WL 2600007, at *3. But minors could opt out of that requirement without parental consent. Thus, that California provision does not necessarily infringe minors' "right to speak or be spoken to without their parents' consent" the way this Utah Act does by *requiring parental consent* for minors to speak beyond state-constrained networks. NetChoice.Br.34, 37-44 (citation omitted).

*Fourth*, unlike California's age-assurance requirements that take effect on January 1, 2027, Utah's age-assurance requirements would be enforceable today—but for the district court's preliminary injunction. The district court analyzed how these requirements chill accessing protected speech and are subject to strict scrutiny based on the Act's content-based coverage definition. App.942, 956 n.169.

Respectfully submitted,

*/s/ Scott A. Keller*
Scott A. Keller
 *Counsel of Record*
 *for Plaintiff-Appellee*

cc:     All counsel of record via ECF

## CERTIFICATE OF SERVICE

On October 17, 2025, the foregoing was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Tenth Circuit CM/ECF User's Manual Sec. II.L; and (2) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/ Scott A. Keller*
Scott A. Keller

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY that this document complies with: (1) the word limit of Fed. R. App. P. 28(j) because this document contains 350 words; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Palatino Linotype) using Microsoft Word (the same program used to calculate the word count).

*/s/ Scott A. Keller*
Scott A. Keller